**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICHARD TRAVERS, | : | |
| | | Civil Action No. 09-5153 (NLH) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| FEDERAL BUREAU OF PRISONS, et al., | : | |
| | | |
| Respondents. | : | |

**APPEARANCES**:

Petitioner pro se
Richard Travers
FCI - Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

**HILLMAN**, District Judge

Petitioner Richard Travers, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The respondents are the Federal Bureau of Prisons and Warden Donna Zickefoose.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the Petition that Petitioner is not entitled to relief at this time, the Petition will be dismissed without prejudice. See 28 U.S.C. § 2243.

I. BACKGROUND

Petitioner was convicted, in the U.S. District Court for the Eastern District of New York, of conspiracy to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). On September 11, 2008, Petitioner was sentenced to a term of imprisonment of two years, pursuant to which he is presently confined. See United States v. Travers, Criminal No. 05-0886 (E.D.N.Y.).

Petitioner alleges that he is currently scheduled for release on October 17, 2010.

Petitioner alleges that his Unit Team has twice considered his pre-release placement in a Residential Re-entry Center ("RRC"). The first review resulted in a recommendation for a 90- to 120-day RRC placement. On July 23, 2009, Petitioner requested that he be considered for a twelve-month pre-release placement, pursuant to the Second Chance Act of 2007, 18 U.S.C. § 3624(c)(1), which became effective April 9, 2008.[2] Petitioner

---

[2] The Second Chance Act provides, in pertinent part:

(1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that

2

alleged special circumstances related to the needs of his autistic child. The second review, conducted on August 6, 2009, resulted in a recommendation for a 120- to 150-day placement.

On August 26, 2009, Petitioner began the Bureau of Prisons administrative remedy procedure by submitting an Informal

---

prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

...

(4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

...

(6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--

    (A) conducted in a manner consistent with section 3621(b) of this title;

    (B) determined on an individual basis; and

    (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

Resolution Form to his Correctional Counselor.[3]  On August 31, 2009, the Correctional Counselor denied the request.

On September 1, 2009, Petitioner submitted a BP-9 to the Warden at Fort Dix.  The only basis asserted for the request for review was Petitioner's need to assist in the care of his autistic son.  On September 22, 2009, the Warden responded.

> This is in response to your Request for Administrative Remedy, dated September 1, 2009, in which you request 12 months Residential Re-Entry Center (RRC) placement. Specifically, you request 12 months halfway house placement based on your need to assist in the care of your autistic son.
>
> A review of your case reveals you are serving a 24 months sentence for Conspiracy to Distribute At Least 100 Kilograms of Marijuana.  You have a projected release date of October 17, 2010, via Good Conduct Time Release.  RRC placement is considered based on the following criteria:

---

[3] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id.  Appeal to the General Counsel is the final administrative appeal. Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

> 1) The resources of the facility contemplated;
> 2) The nature and circumstances of the offense;
> 3) The history and characteristics of the prisoner;
> 4) Any statement of the court that imposed the sentence;
> (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (b) recommending a type of penal or correctional facility as appropriate; and
> 5) Any pertinent policy statement issued by the U.S. Sentence Commission.
>
> In addition, recommendations for RRC placement are based on assessments of an inmate's need for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly.  The Bureau will ensure the decision for RRC placement will be of sufficient duration to provide the greatest likelihood of successful reintegration into the community.
>
> In your particular case, the Unit Team considered you for halfway house placement according to the Second Chance Act of 2007, on February 19, 2009.  It was determined that 90-120 days in (RRC) placement would be sufficient to meet your pre-release needs.  This recommendation was based on you having an established release residence, potential for employment in the food market industry, a Bachelor of Science degree, and employable skills.  At your latest program review, August 6, 2009, the Unit Team modified the original RRC recommendation to 120-150 days RRC placement based on your family issues, to include your autistic son.
>
> Your case was appropriately reviewed for consideration in compliance with the Second Chance Act.  The Unit Team's recommendation of 120 to 150 days is appropriate.  This recommendation will provide sufficient time for your to secure employment and accrue funds to facilitate a successful transition back into the community.  In addition, you will be able to reunite with your family and assist with your son's needs.  Accordingly, your request is denied.

(BP-9 Response, Ex. I to Petition.)

On October 1, 2009, Petitioner submitted a BP-10 request to the Northeast Regional Office of the Federal Bureau of Prisons.

On October 7, 2009, without exhausting his administrative remedies, Petitioner submitted this Petition.

Petitioner argues that his failure to exhaust administrative remedies should be excused, because he says that he is challenging the validity of the BOP's interpretation of the Second Chance Act, and exhaustion of administrative remedies will cause "irreparable harm" with every day that Petitioner is denied earlier RRC placement.

With respect to the merits, Petitioner contends that the Unit Team made its recommendation in reliance on an April 14, 2008 BOP Memorandum, providing staff guidance for implementing the Second Chance Act.  Among other guidelines, the Memo provides:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(BOP Memo, April 14, 2008, Part III, D, attached as Ex. D to Petition.)

Petitioner also acknowledges the subsequent BOP interim rule which does not contain the "directive" limiting prisoners to six-months pre-release placement in a halfway house.  See 73 F.R. 62440-01, 2008 WL 4619649 (October 21, 2008).  Petitioner's

6

placement decision was made after the effective date of the interim rule. Nevertheless, Petitioner alleges that his placement decision was impermissibly constrained by the six-month presumption contained in the April 14, 2008, memorandum.[4]

Petitioner seeks all appropriate relief.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Nevertheless, a federal district court can

---

[4] The only factual allegation made in support of this contention is that BOP staff at FCI Fort Dix have not awarded more than 180 days RRC placement to any prisoner since the effective date of the Second Chance Act.

7

dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

### III.   ANALYSIS

Petitioner admits that he has not exhausted his administrative remedies, but he asserts that exhaustion should be excused as futile because exhaustion can not be completed in a timely manner, that is, before the maximum potential twelve-month pre-release RRC placement.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

   Petitioner has not alleged any facts that would permit this Court to find that exhaustion of his administrative remedies would be futile or that requiring exhaustion would subject Petitioner to "irreparable injury."  The initial stages of the administrative remedy process resulted in prompt responses.  Moreover, by characterizing the process as futile, Petitioner presupposes that his grievance will be denied.

   Without a full administrative record regarding the claim asserted here, this Court cannot determine whether the decision was made in accordance with law.  See, e.g., Gamble v. Schultz,

No. 09-3949, 2009 WL 2634874 (D.N.J. Aug. 24, 2009); Harrell v. Schultz, No. 09-2532, 2009 WL 1586934 (D.N.J. June 2, 2009).  In this regard, the Court notes that Petitioner asserts here a different claim than that presented in the administrative review process.  In the administrative remedy request presented to the Warden, Petitioner argued solely that his personal circumstances merited a longer RRC placement pursuant to the BOP's discretion – an argument directed to the BOP's exercise of its discretion.  Nowhere in that first administrative remedy request did Petitioner assert that the decision had been based upon the April 14 memorandum or any other allegedly incorrect interpretation of the Second Chance Act.  Thus, Petitioner has made no attempt to administratively exhaust the claim presented here, and there exists no administrative record regarding review of the claim presented here.

   Finally, contrary to Petitioner's argument, nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved.  Those pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations.

   For the foregoing reasons, the Petition will be dismissed without prejudice for failure to exhaust administrative remedies.

Cf. <u>Brown v. Grondolsky</u>, No. 09-3290 (RMB), 2009 WL 2778437 (D.N.J. Aug. 31, 2009) (declining to excuse failure to exhaust).

## IV. CONCLUSION

For the reasons set forth above, the Petition will be dismissed without prejudice. An appropriate order follows.

At Camden, New Jersey         /s/ NOEL L. HILLMAN
                                              Noel L. Hillman
                                              United States District Judge

Dated: November 30, 2009